FILED
2010 Jun-09  AM 11:58
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION**

| | | |
|---|---|---|
| **TRAVIS SMITH**, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 09-BE-1173-E** |
| | ) | |
| **MICHAEL J. ASTRUE**, | ) | |
| **Commissioner of the Social** | ) | |
| **Security Administration**, | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION**

**I. INTRODUCTION**

On January 25, 2005, the claimant, Travis Smith, applied for disability insurance benefits and supplemental security income under Title II and Title XVI of the Social Security Act, respectively.  (R. 24).  The claimant alleges disability commencing on December 31, 2004, subsequently amended to April 12, 2005. (R. 233).  The Commissioner denied the claim.  (R. 24).  The claimant filed a timely request for a hearing before an Administrative Law Judge, and the ALJ held a video hearing on August 6, 2007. (R. 31, 218).  In a decision dated December 15, 2007, the ALJ found that the claimant was not disabled as defined by the Social Security Act, and thus, was ineligible for disability insurance benefits and supplemental security income.  (R. 21).  On April 10, 2009, the Appeals Council denied the claimant's request for review; consequently, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration.  (R. 3).  The claimant has exhausted his administrative remedies, and this court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  For the reasons stated

below, this court AFFIRMS the decision of the Commissioner.

## II. ISSUE PRESENTED

The claimant presents the following issue for review: whether the ALJ properly applied the Eleventh Circuit's three-part pain standard.

## III. STANDARD OF REVIEW

The standard for reviewing the Commissioner's decision is limited. This court must affirm the Commissioner's decision if the Commissioner applied the correct legal standards and if the factual conclusions are supported by substantial evidence. *See* 42 U.S.S. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

"No...presumption of validity attaches to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Walker*, 826 F.2d at 999. The court does not review the Commissioner's factual determinations *de novo*. The court will affirm those factual determinations that are supported by substantial evidence. "Substantial evidence" is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

The court must "scrutinize the record in its entirety to determine the reasonableness of the [Commissioner]'s factual findings." *Walker*, 826 F.2d at 999. A reviewing court must not look only to those parts of the record that support the opinion of the ALJ, but also must view the record in its entirety and take account of evidence that detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986).

2

## IV. LEGAL STANDARD

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To make this determination, the Commissioner employs a five-step, sequential evaluation process:

(1) Is the person presently unemployed?
(2) Is the person's impairment severe?
(3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. 1?
(4) Is the person unable to perform his or her former occupation?
(5) Is the person unable to perform any other work within the economy?

An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986); 20 C.F.R. §§ 404.1520, 416.920.

In evaluating pain and other subjective complaints, the Commissioner must consider whether the claimant demonstrated an underlying medical condition, and *either* "(1) objective medical evidence that confirms the severity of the alleged pain arising from the condition *or* (2) that the objectively determined medical condition is of such severity that it can reasonably be expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (emphasis added); *see also Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); 20 C.F.R. § 404.1529.

## V. FACTS

The claimant has an eleventh-grade education and was forty-eight years old at the time of the administrative hearing.  (R. 222).  His past work experience includes employment as a cement finisher, cleaning supervisor, and radiator repairman.  (R 88).  The claimant alleges that he has been unable to work since April 12, 2005 because of pain in his neck, shoulders, and feet. (R. 18).

### Foot Pain Treatment History

On August 20, 2002, the claimant visited his treating family physician, Dr. William M. Holbrook, complaining of pain in his feet.  (R. 117).  Between August 2002 and May 2003, Dr. Holbrook treated the claimant for plantar fasciitis (irritation and swelling of the thick tissue on the bottom of the foot).  ( R. 114-16).  Dr. Holbrook's treatment notes indicate that despite conservative therapy including insoles, exercises, medications, and steroid injections**,** the claimant's foot pain persisted.  (R. 115).  Dr. Holbrook referred the claimant to a podiatrist, Dr. James H. Bowman, for treatment of his foot pain.  (R. 114).

On May 15, 2003, Dr. Bowman, a treating podiatrist, examined the claimant.  Dr. Bowman diagnosed the claimant with plantar fasciitis, pes planus foot structure (flat arch), metatarsalgia (inflamation of the nerve that runs between the third and fourth elongated bones in the foot), and ankle valgus (abnormal turning out of ankle bone).  Dr. Bowman treated the claimant with taping and strapping.  (R.102).  On May 22, 2003, Dr. Bowman saw the claimant for a follow-up examination at which he noted the claimant's improvement and  molded conformer inserts for the claimant.  (R. 100).  On June 25, 2003, Dr. Bowman again saw the claimant for an examination of his foot pain.  This examination revealed posterior tibial

dysfunction (condition impairing the tendon's ability to support the arch leading to a flattened foot); however Dr. Bowman noted that the claimant was doing "extremely well" regarding his foot pain.  (R. 103).

In January 2005,  the claimant visited Dr. Bowman twice for treatment of his bilateral foot pain.  Dr. Bowman noted mild swelling in the tarsal tunnel region, prescribed medication, and adjusted the claimant's inserts.  (R. 104-05).  On February 14, 2005, the claimant told Dr. Bowman at a follow-up appointment that he could only stand for five to ten minutes at a time before he started to feel discomfort in his feet.  Dr. Bowan adjusted the claimant's inserts and dispensed Biofreeze.  (R. 106).  In response to complaints of right lower extremity pain and numbness, Dr. Bowman referred the claimant to Dr. Wael Hamo for electrodiagnostic studies of the right leg.  The electromyography report from April 8, 2005 revealed findings consistent with lateral and medial tarsal tunnel syndrome (foot condition in which the tibial nerve is impinged and compressed as it travels through the tarsal tunnel).  (R. 109).

On April 14, 2005, Dr. Bowman completed a doctor's certificate for the Alabama Department of Industrial Relations.  He opined that the claimant was not able to perform the duties of his usual occupation as an auto mechanic, but that the claimant was able to perform some type of work including "sit down jobs" with no excessive standing or walking.  (R. 108).

On May 23, 2005, Dr. James J. Matic, an internist and consulting physician, examined the claimant.  (R. 157).  Based on a physical examination, Dr. Matic reported that the claimant had moderately flat arches in both feet, mild swelling of the ankles of both feet, and arterial pulses present in all usual areas in each foot.  Dr. Matic noted an absence of skin lesions, swelling, or varicosities.  Further, Dr. Matic reported that the claimant did the heel walk and the toe walk and

could squat and rise while holding onto the exam table.  Dr. Matic diagnosed degenerative joint disease and plantar fasciitis of the feet, in addition to status post three hernia surgeries and controlled hypertension.  (R. 158).

On January 19, 2006, the claimant visited Dr. Karl E. Hofammann, III, an orthopedic surgeon and treating physician, for further evaluation of his foot pain.  The claimant told Dr. Hofammann that he has had problems in his right foot since 2002 and that his foot hurt in the mid foot, top and bottom.  The claimant also told Dr. Hofammann that he had to stop working in his janitorial position because of his foot pain.  Dr. Hofammann diagnosed the claimant with mid foot arthritis and ordered a bone scan, arthritis panel, and electrical studies of the right leg.  (R. 211).

On February 13, 2006, the claimant visited Dr. Hofammann for a follow-up appointment. Dr. Hofammann reported that the electrical studies failed to show a tarsal tunnel syndrome, but did show some distal denervation of the right foot.  Dr. Hofammann stated, "I doubt there is anything surgical to be offered" and noted that the claimant would probably need orthotics.  (R. 210).

Following the recommendation of Dr. Hofammann, the claimant visited Dr. Eli J. Hurowitz, an orthopaedic specialist and treating physician, on April 3, 2006 for further examination of his foot pain.  The claimant told Dr. Hurowitz that his pain was constant along both the top and the bottom of his foot and that the pain was worse the longer he was on his feet. The claimant stated that he was able to walk about the distance of his mailbox and then he had to sit down.  (R. 191).  Dr. Hurowitz diagnosed a right-sided posterior tibial tendon dysfunction stage II (adult acquired flatfoot) and recommended the use of a lace-up brace with a torsionally

6

stable shoe.  Dr. Hurowitz advised the use of a full-length total contact insert and over-the-counter Aspercreme, Advil, or Alleve for pain management.  (R. 190).

On December 1, 2006, the claimant told Dr. Hurowitz at a follow-up appointment that his foot pain had gotten worse and was more severe on the right side.  The claimant reported that he had not obtained the orthotics because of their cost and was waiting to see if he really needed them.  A physical examination resulted in an unchanged diagnosis from April 2006.  Dr. Hurowitz placed the claimant on another nonsterodial anti-inflammatory.  (R. 189).

On February 26, 2007, the claimant visited Dr. Hurowitz for another follow-up examination.  The claimant reported that he was not doing any better, and the right side remained worse than the left.  According to the claimant, the anti-inflammatory prescribed in December 2006 did not help.  Dr. Hurowitz prescribed a different medication, Declofenac, and again recommended a full contact insert.  (R. 188).

*Neck and Shoulder Pain Treatment History*

On August 20, 2002, the claimant visited Dr. Holbrook, his family physician, complaining of right shoulder pain that had been progressively worsening over the last four to five months.  Dr. Holbrook prescribed Celebrex and a heating pad for the shoulder pain.  (R. 116).  On December 13, 2002, the claimant told Dr. Holbrook at a follow-up appointment that the Celebrex had helped his right shoulder.  (R. 115).

Four years later, on December 14, 2006, the claimant visited Dr. Holbrook complaining of pain in his right shoulder.  The claimant stated that the pain occurred when he tried to bring his arm over his head and had been present for the last couple of months.  (R. 206).  At his follow-up appointment on March 16, 2007, the claimant stated that his shoulder pain had gone

7

away with medication, but that the pain had moved up into the back of his neck.  Dr. Holbrook's records indicated that the neck pain had been present for about a month and shot up through the middle portion of the claimant's neck.  (R. 205).

*Other Limitations*

The claimant underwent three hernia surgeries between 2000 and 2003.  The claimant received a close period of disability during this time.  (R. 222).  In October 2000, the claimant underwent inguinal hernia repair surgery (surgery to correct a protrusion of abdominal-cavity contents through the inguinal canal).  (R. 133).  On June 1, 2001, the claimant underwent an orchiectomy of the left testicle (removal of the left testicle), his second hernia repair surgery.  (R. 147).  Then in February 2003, the claimant underwent an exploration of the left groin.  (R. 151).  Because of prior problems with hernias, the claimant can lift only ten pounds.  (R. 227).

On August 20, 2002, Dr. Holbrook diagnosed the claimant with depression and prescribed Zoloft to treat the depressive disorder.  (R. 117).  On November 2, 2006, Dr. Holbrook again diagnosed the claimant with depression and prescribed Zoloft.  (R. 207).  At a December 4, 2006  follow-up appointment, the claimant reported that the Zoloft had worked.  (R. 206).  At his next follow-up on March 16, 2007, the claimant stated that his depression had been stable on the Zoloft.  (R. 205).

On May 17, 2005, Dr. Robert Storjohann, a consulting psychologist, examined the claimant.  Dr. Storjohann's treatment notes indicate that the claimant reported a period of depression from 2001 through 2002, but that the claimant was not depressed at the time of the evaluation.  Dr. Storjohann noted that the claimant had no apparent deficits in understanding or working with others that would affect his abilities in the workplace.  (R. 159).

8

*The ALJ Hearing*

After the Commissioner denied the claimant's request for disability insurance benefits and supplemental security income, the claimant requested and received a hearing before an ALJ. (R. 31).  At the hearing, the claimant testified that pain in his feet was the primary cause of his disability, and he also experienced pain in his shoulder and neck.  (R. 225).

The claimant testified that he had experienced foot pain for a long time and has had shoulder and neck pain for about one year.  Because of the pain, the claimant testified that he can stand for only ten minutes at a time and can walk one-half of a block at a time.  (R. 226).  The claimant testified that because of his limited ability to stand or walk, he can only do thirty minutes of housework or yard work at a time before having to rest.  (R. 225).  When asked about sitting, the claimant testified that if he sits for twenty to thirty minutes, he has bad pain in his feet when he stands up.  Further, the claimant testified that if he remains sitting for twenty to thirty minutes, he experiences pain in his neck and shoulder area.  (R. 227).

The claimant testified that he is able to lift only ten pounds at one time because of past hernia surgeries.  (R. 227).  From 2000 through 2003, during which time period the claimant had these problems with hernias, the claimant testified that he received a closed period of disability. (R. 222, 227).

The claimant testified that he has had daily problems resulting from his depression medication.  He testified that the medication made him woozy and that during a regular ten hour day, he had to lie down for a total of two-and-a-half hours, with the time spilt up throughout the day.  He stated that he needed to lie down during the day both for pain management and drowsiness from the depression medication.  (R. 228).

9

The claimant testified that he lost his previous job as a radiator repairman because he could not fulfill the duties of the position, which required lifting, walking, and standing. He stated that he was missing days of work and had to leave early from work because of his pain. (R. 224).

The ALJ questioned the claimant about earnings reported for the year 2005 from Quality Auto Parts and A-1 Temporary Services. (R. 230-33). The ALJ asked the claimant if he had worked subsequent to the protective filing date of January 25, 2005. The claimant testified that he could not recall whether he had performed work that would account for the reported earnings. (R. 232). The claimant's attorney moved to amend the filing date to April 12, 2005, the date of actual file, to reconcile the earnings reported for 2005. (R. 233).

A vocational expert, John M. Long, Jr., testified concerning the type and availability of jobs that the claimant was able to perform. (R. 233-37). The ALJ asked Mr. Long to assume that the claimant was a younger individual with a limited education, who had three hernia surgeries, had some shoulder, neck, and feet pain, and who was limited to occasionally lifting ten pounds. Additionally, the ALJ added that the hypothetical claimant would spend the majority of the day in the seated position and had no problems maneuvering the hands, listening, or "thinking as such." (R. 234). Mr. Long responded that under these constraints, the claimant could perform sedentary work either in an assembly job, a hand packing job, or a cashier position. (R. 235).

The ALJ asked Mr. Long to decide whether the same work opportunities would be available when the claimant had the added constraint of needing to lie down for as much as two-and-a-half hours because of pain. Mr. Long responded that these job opportunities would not be available for a claimant with the additional condition. (R. 235).

10

The ALJ further questioned Mr. Long by asking him to identify work opportunities for a person who had some pain in his ears, occasional reflux, hypertension, gastroesophageal reflux disease (condition in which the stomach contents leak backwards from the stomach into the esophagus), a limited ability to do repetitive tasks with his hands, neck and shoulder pain, depression medication causing some wooziness, a history of pain in the foot and heel that would require orthotics for comfort in standing and walking, and cannot lift over ten pounds.  Mr. Long responded that the wooziness's effect on concentration and any problems utilizing his hands because of neck and shoulder pain would preclude the primarily sedentary job.  (R. 235).  Mr. Long testified that if the wooziness were eliminated so that the claimant could concentrate and if the claimant could still use his hands frequently, he would still have access to jobs as a hand packer and cashier.  (R. 236-37).

<em>The ALJ's Decision</em>

On December 15, 2007, the ALJ issued a decision finding that the claimant was not disabled under the Social Security Act.  (R. 14).  The ALJ first found that the claimant had not engaged in substantial gainful activity since the alleged onset of his disability.  (R. 14-15).  Next, the ALJ found that the claimant's plantar fasciitis, degenerative joint disease of the feet, history of multiple hernia repair surgeries, hypertension, gastroesophageal reflux disease, and depressive disorder qualified as severe impairments.  (R. 15).  The ALJ concluded, however, that these impairments did not singly nor in combination meet or medically equal one of the listed impairments.  (R. 17).

The ALJ next considered the claimant's subjective allegations of pain to determine whether he had the residual functioning capacity to perform any type of work.  The ALJ

concluded that the claimant was able to perform sedentary work and that his pain and mental impairment were "reasonably expected to impose no greater than mild to moderately functional limitations upon his ability to engage in basic work activities."  The ALJ found that the claimant's "medically determinable impairments could reasonably be expected to produce some of the alleged symptoms, but the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible or supported by the objective medical evidence of the record."  (R. 17).

To support her conclusion, the ALJ first considered the alleged foot pain, referencing the treatment notes of Dr. Bowman, Dr. Matic, and Dr. Hofammann.  The ALJ found that Dr. Bowman's opinion indicated that, although the claimant was no longer able to perform his past work because of the need for excessive standing and walking, the claimant could engage in sedentary work activity or perform "sit down jobs."  The ALJ found that Dr. Matic's records also supported her conclusion because they indicated (1) the claimant had only mild swelling of the ankles and feet, (2) the claimant's gait was normal, and (3) the claimant could heel/toe walk, squat, and rise with no difficulty.  In support of her decision, the ALJ also referenced the opinion of Dr. Hofammann that the claimant's foot problems were "not of such severity as to require surgical intervention."  (R. 18).

In considering the claimant's neck and shoulder pain, the ALJ noted that Dr. Matic's examination found that the claimant's neck and shoulders were normal and that the claimant had a full range of motion of the upper extremities.  The ALJ also referenced Dr. Holbrook's medical records, which indicated (1) that the claimant was treated only once for his right shoulder pain in December 2006 and that the pain was completely resolved by March 2007, and (2) that at the

time when the claimant had complaints of neck pain, his physical examination was within normal limits.  (R. 18).

The ALJ noted that the claimant was limited to lifting and carrying only up to ten pounds as a result of multiple hernia surgeries.  She did, however, reject the claimant's alleged problems with his hands, noting an absence of any objective medical treatment of the claimant's hands. Further, the ALJ supported her dismissal of the claimant's hand pain by citing Dr. Matic's May 2005 treatment notes that indicated full range of motion of extremities, 3-4/5 grip strength, and average dexterity of both hands.  (R. 19).

To further support her decision, the ALJ referenced the claimant's medical history questionnaire where he denied having headaches, dizziness, or other side effects of his medication.  Although the claimant alleged having debilitating pain and medication side effects that require him to lie down during the day, the ALJ found that the claimant could still perform daily functions and referenced the claimant's daily activity questionnaire in which he said that he was able to care for his personal needs, prepare meals, shop once a week, perform household chores, and visit relatives weekly.  Based on the mental status examination of Dr. Storjohann and the treatment notes of Dr. Holbrook, the ALJ found that the claimant's mental status and depression did not impose significant functional limitations on his ability to perform work activities.  (R. 19).

The ALJ concluded that the claimant's impairments may impede his ability to perform some unskilled sedentary jobs; however, the ALJ decided, based on the testimony of the vocational expert, that even with the claimant's limitations, jobs were available in the national economy for an individual of the claimant's age, education, work experience, and residual

functioning capacity. (R. 20). Thus, the ALJ found that the claimant was not disabled under the Social Security Act. (R. 21).

## VI. DISCUSSION

The claimant argues that the ALJ improperly applied the Eleventh Circuit's three-part pain standard. To the contrary, this court finds that the ALJ properly applied the pain standard and that substantial evidence supports her decision.

The three-part pain standard applies when a claimant attempts to establish disability through his own testimony of pain or other subjective symptoms. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). "The pain standard requires (1) evidence of an underlying medical condition and *either* (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition *or* (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Id.* (emphasis added). A claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability. *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995).

In applying the three-part pain standard, if the ALJ decides not to credit a claimant's subjective testimony of pain, he must discredit it explicitly and articulate his reasons for doing so *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991). Failure to articulate the reasons for discrediting the claimant's subjective complaints of pain requires that the testimony be accepted as true. *Id.*

In this case, the ALJ conceded that the claimant's medically determined impairments could reasonably be expected to produce some of the alleged symptoms; however, she found that

14

the objective medical evidence fails to support the claimant's statements concerning the "intensity, persistence and limiting effects of these symptoms." (R. 18).

The ALJ articulated adequate reasons, based on objective medical evidence, for rejecting the claimant's testimony that his foot pain was disabling.  She referenced Dr. Bowman's opinion from April 2005 that, although the claimant was no longer able to engage in any activities requiring excessive standing or walking, including his past relevant work as an auto mechanic, the claimant could engage in sedentary work activity or perform "sit down jobs."  Dr. Bowman's statement does not address the effect of the claimant's foot pain on his ability to maintain adequate work attendance at a "sit down job;" however, the claimant's testimony indicated that his problems with work attendance at his previous job were the result of pain from standing, lifting, and walking—none of which are components of sedentary jobs.  Although the claimant argues that Dr. Bowman's statement was made before the onset date of the disability, the record shows that Dr. Bowman dated his statement on April 14, 2005,  two days after the amended disability onset date of April 12, 2005.  (R. 108).

As the ALJ further noted, Dr. Matic found in May 2005 that the claimant had only mild swelling of the ankles and feet and Dr. Hofammann, in February 2006, indicated that the claimant's foot problems were not of such severity as to require surgical intervention.  The claimant contends on appeal that the ALJ erred in interpreting Dr. Hofammann statement that "I doubt that there is anything surgical to be offered" to mean that the claimant's condition was not severe enough to require surgery.  Even if the ALJ's interpretation of Dr. Hofammann's statement was incorrect, such an error would not change the outcome of the case as the ALJ has explicitly cited the opinions and treatment notes of two other physicians in substantiating her

15

dismissal of the claimant's subjective assertion of the disabling nature of his foot pain.

The ALJ provided specific rationale for rejecting the claimant's additional testimony of disabling conditions. In discrediting the extent of the claimant's side effects from depression medication, the ALJ referenced the absence of any medical evidence that the claimant ever complained of side effects of his medication, including the need to lie down for two-and-a-half hours per day as the claimant testified. The ALJ also considered the claimant's medical history report completed on April 3, 2006 in which the claimant indicated that he did not or had not experienced dizziness or other side effects that would require him to lie down. Further, the ALJ cited the claimant's daily activities questionnaire in support of her decision. The ALJ noted the claimant's ability to do many daily activities as a factor in her decision to discredit the claimant's alleged need to lie down during the day, in accordance with the Code of Federal Regulations. (20 C.F.R. §§ 404.1529(c)(3)(I)). The activities questionnaire was a factor considered, not dispositive evidence, in the ALJ's decision as she had already cited medical evidence, or lack of medical evidence, in support of her conclusion.

Based on the explicit findings of the ALJ, this court concludes that she properly applied the Eleventh Circuit's three-part pain standard and that substantial evidence supports her decision. Therefore, this court affirms the decision of the Commissioner.

## VII. CONCLUSION

For the reasons as stated, this court concludes that the decision of the Commissioner is

supported by substantial evidence and is to be AFFIRMED.  The court will enter a separate order

to that effect simultaneously.

DONE and ORDERED this 9th day of June 2010.


KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE